**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Shawn M. Stayrook

      v.                                  Civil No. 09-cv-11-JL

Paul Cascio, et al.[1]

**REPORT AND RECOMMENDATION**

      Before the Court is Shawn Stayrook's complaint (document no.
1), filed pursuant to 42 U.S.C. § 1983, alleging that the
defendants have violated his federal constitutional rights by
denying him due process in prison classification proceedings, and
interfering with his right to petition the government for a
redress of grievances.  The matter is before me for preliminary
review to determine, among other things, whether the complaint
states any claim upon which relief might be granted.  See 28
U.S.C. § 1915A; United States District Court District of New
Hampshire Local Rule ("LR") 4.3(d)(2).

---

     [1]Stayrook has named the following individuals as defendants
to this action in their individual and official capacities: New
Hampshire State Prison ("NHSP") Lt. Paul Cascio, NHSP
Classifications Officer Terry Reed, NHSP Classifications
Administrator Kim Lacasse, NHSP Warden Richard Gerry, NHSP Capt.
Christopher Kench, and New Hampshire Department of Corrections
Commissioner William Wrenn.

<u>Standard of Review</u>

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the Magistrate Judge is directed to conduct a preliminary review.  LR 4.3(d)(2).  In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded.  See <u>Erickson v. Pardus</u>, 551 U.S. 89, ___, 127 S. Ct. 2197, 2200 (2007) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) and <u>Haines v. Kerner</u>, 404 U.S. 519, 520–21 (1972) to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  <u>See Castro v. United States</u>, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997).  All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true.  <u>See id.</u>  This review ensures that pro se pleadings are given fair and meaningful consideration.

<u>Background</u>

Shawn Stayrook is an inmate at the New Hampshire State Prison ("NHSP").  On August 25, 2008, Lt. Paul Cascio, who was in charge of classification on Stayrook's housing unit, held a classification board to review Stayrook's security status.  After the hearing, Cascio recommended that Stayrook's security status be reduced from C-4, or "close custody" status, to C-3, which is medium security.  The recommendation was based on the fact that Stayrook's behavior had improved in the four months since his last classification board was held.  Cascio sent his recommendation to Kim Lacasse, the Classifications Administrator at the NHSP, in writing, for approval.

On September 11, 2008, Stayrook was involved in an altercation with a corrections officer.  As a result, Cascio contacted Lacasse, who had not yet approved or denied Stayrook's custody status reduction, and rescinded the recommendation that Stayrook's custody status be lowered to C-3.  On September 12, 2008, Lacasse denied Stayrook C-3 status.  Stayrook therefore remained at C-3 status.  Lacasse authorized further review of Stayrook's security status after ninety days.  Stayrook says that at the time his classification change was denied, he had not yet

been to a hearing regarding the September 11 disciplinary infraction and report.

On September 19, 2008, Stayrook attended a prehearing conference regarding his disciplinary infraction. Stayrook pleaded guilty to a charge of resisting an officer, and was sanctioned with seventy-five hours of extra duty and thirty days loss of prison commissary. Another charge of being disrespectful to an officer was dismissed.

On September 23, 2008, Stayrook sent an Inmate Request Slip ("IRS") to Lacasse asking for an explanation of the denial of his reduction in custody level. On September 29, 2008, Terry Reed, the NHSP Classifications Officer, responded to Stayrook's IRS advising that Cascio had contacted the classifications office and withdrawn his recommendation that Stayrook's custody level be reduced.

On September 29, 2008, Stayrook sent an IRS to Cascio requesting that he reinstate the recommendation that Stayrook's security status be reduced to C-3. Stayrook complained that Cascio violated his due process rights by revoking his recommendation on the basis of post-classification-hearing conduct for which Stayrook had not yet been afforded any kind of

disciplinary or classification review hearing.  On September 30, Stayrook sent an IRS to Lacasse, which Lacasse rerouted to Cascio, again complaining that his classification recommendation had been revoked without his having had an adequate opportunity to be heard, and also noting that he would be denied parole if he remained at C-4 status.

On October 4, 2008, Cascio responded to Stayrook's September 29th and 30th IRSes, stating that the Classifications Administrator had actually been the one to deny Stayrook a reduction in status, and that he had simply notified the classifications office that Stayrook had received a disciplinary report for the September 11 incident.  Cascio also advised Stayrook that even if no disciplinary report had been issued, the denial of C-3 status was warranted by Stayrook's continued defiant and oppositional behavior.  Cascio also advised Stayrook that, contrary to Stayrook's assertion in his IRS, he had not had his C-3 status revoked, but had never been granted C-3 status at all, and that, had he been granted C-3 status, he would have received an appropriate hearing prior to being returned to C-4 status.

On October 5, 2008, Stayrook sent an IRSes to both Lacasse

and Cascio complaining that his retention at a C-4 status amounted to punishment for the September 11 altercation without a due process hearing.  Lacasse responded the next day, advising Stayrook to address his classification questions to Cascio while he was housed on Cascio's unit.

On October 6, 2006, Cascio responded to Stayrook, advising him that the classification process was separate and distinct from the disciplinary process.  Cascio stated that, by virtue of his repeated behaviors, Stayrook presents a security risk to the NHSP and a risk to the general public.  Accordingly, C-4 is an appropriate classification, based on Stayrook's behavior in prison, entirely apart from whether or not a disciplinary report had been issued, heard, or resolved in any particular matter. That same day, Stayrook sent IRSes to Cascio, complaining that the bouncing around of his IRS forms between Lacasse and Cascio was preventing him from being able to exhaust his administrative remedies, and ultimately would impair his ability to file a civil rights lawsuit regarding his classification complaint.

On October 8, Cascio responded that he had not realized that Stayrook was complaining, but thought he was simply seeking information and clarification regarding the classification

decision that had been made, which would have appropriately been addressed to Cascio, as the classifications point person for Stayrook's housing unit.  Lacasse responded to Stayrook's October 6 IRS on October 17, stating that he was denied C-3 status due to his unacceptable post-classification board behavior.

On October 5, Stayrook filed a grievance with NHSP Warden Richard Gerry, complaining about both his classification hearing result, and the confusion arising out of the passing back and forth between Cascio and Lacasse of responsibility, both for the decision itself, and for responding to his IRSes regarding that decision.  On October 9, 2008, Stayrook received a response from Gerry.  Gerry simply advised him that classification decision appeals must be sent to the Classifications Administrator, Kim Lacasse, in the first instance, prior to the filing of a grievance.

On October 26, after receiving Lacasse's October 17 response to his IRS, Stayrook filed another grievance with Gerry.  The grievance went through the classification and complaint history of Stayrook's situation.  Gerry responded on October 27, stating that secondary appeals of classifications decisions must be made directly to the Commissioner of Corrections, William Wrenn, and

7

that the Warden did not have appellate authority in classifications matters.

Stayrook did file a grievance with Wrenn on October 26, 2008, again stating the history of the classification and complaint problems he had experienced.  On November 4, Capt. Christopher Kench responded to Stayrook's grievance on Wrenn's behalf.  Kench stated that the grievance was unacceptable because Stayrook had failed to provide copies of request slips, a requirement of appealing a classifications decision to the commissioner.  Kench responded to the complaints raised, stating that Cascio had issued a legitimate response to Stayrook, and that Stayrook's complaint had to initially be made to the "lowest level of inst[]" personnel.  It is unclear whether Kench was describing Cascio's substantive response as legitimate or, in contrast to the advice provided to Stayrook by Gerry, the fact that Stayrook's first level appeal should have been made to Cascio rather than to Lacasse.[2]

_____

[2]NHDOC Policy and Procedure Directive 7.14, which governs classification procedures, provides that a first level appeal of a classification decision be made, within fifteen days of the classification board, to the Classification Administrator, and that a secondary level appeal be made to the Commissioner within fifteen days of the denial of the first level appeal.  N.H. Admin. Code Cor 402.13, however, directs inmates to appeal a classification board result to the Warden in the first instance,

Discussion

I.   42 U.S.C. § 1983

A government official may be held personally liable under 42 U.S.C. § 1983 if, acting under color of state law, the official caused the deprivation of a federal constitutional or statutory right.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).[3]  Stayrook claims that the defendants were persons acting under color of state law when they violated his constitutional rights. Accordingly, his claims arise under § 1983.

_____

and only after being denied relief by the Warden, to the Commissioner.  I can find no authority for Kench's assertion that appeal will not be accepted without all of the relevant IRS forms attached, and it is not clear from the complaint what authority Kench relies upon in making the assertions in his response to Stayrook.

[3]42 U.S.C. § 1983 states, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

II.   <u>Fourteenth Amendment Claims</u>

The Due Process Clause of the Fourteenth Amendment protects individuals against deprivations of life, liberty, or property. <u>See</u> U.S. Const. amend. XIV.  In order to obtain relief under the protection of the Due Process Clause, a plaintiff must allege that one of those interests is at stake.  "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty.'"  <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005).  Alternatively, such an interest "may arise from an expectation or interest created by state laws or policies." <u>Id.</u>  Stayrook brings his claims alleging both a liberty interest in a reduction in custody level arising from the Constitution, and a right to such a reduction created by state laws and regulations.  I address both claims below.

A.   <u>Classification</u>

1.   <u>Liberty Interest</u>

Stayrook alleges that once he received Cascio's recommendation of a reduction to C-3 status, that he gained a liberty interest in obtaining that status.  However, an inmate has no constitutionally protected liberty interest in being housed in a particular facility or classified in a particular

security status.  <u>Wilkinson</u>, 545 U.S. at 221–22 (citing <u>Meachum</u> <u>v. Fano</u>, 427 U.S. 215, 225, 228 (1976) (prison officials have discretion to transfer inmate "for whatever reason or for no reason at all")).  This is true even if a transfer requires an inmate to live less comfortably than before the transfer.  <u>See</u> <u>McKune v. Lile</u>, 536 U.S. 24, 39 (2002) (citing <u>Hewitt v. Helms</u>, 459 U.S. 460, 467 n.4 (1983) and <u>Meachum</u>, 427 U.S. at 228 (expectation that a certain housing status will continue too ephemeral to trigger procedural due process protections)); <u>see</u> <u>also</u> <u>Sandin v. Connor</u>, 515 U.S. 472, 484 (no due process violation occurs where housing assignment does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.").  I find, therefore, that Stayrook has no constitutionally created liberty interest in obtaining C-3 status, or in retaining a recommendation for C-3 status, and I recommend that his claims, to the extent they rely on the existence of such a liberty interest, be dismissed.

     2.  <u>Procedural Due Process</u>

    In addition to his claim of a liberty interest in retaining a recommendation for reduction to C-3 status, Stayrook also alleges that state law and New Hampshire Department of

Corrections ("NHDOC") regulations create a right to a due process hearing where, as here, a classification recommendation is changed based on behavior that occurred after a reclassification board. Stayrook alleges that the rescission of Cascio's recommendation, without further hearing regarding the allegations that prompted the rescission, violated his right to due process in classification decisions.

Classifications processes are governed by N.H. Admin. Code Cor 401, et seq., ("the Code") which establishes "the general framework for an objective corrections classification system." N.H. Admin. Code Cor ("COR") 401.01. That section also acknowledges that "[t]he day-to-day internal practices and procedures of the classification system are contained in the classification handbook," an internal NHDOC document. Id. Pursuant to that regulation, a classification board is charged with reviewing inmate progress and making reclassification recommendations to the NHDOC Classifications Officer. See COR 404.04. NHDOC inmates are granted classification review hearings at least annually. See COR 403.01(c) (requiring inmates to attend a classification board at least annually). As a general rule, C-4 inmate classifications are reviewed every six months,

or earlier "if considered appropriate by the unit team or
classification officer."  <u>See</u> COR 404.04(d) and (e)(2).

Stayrook has supplied wording from the Classification
Handbook utilized by the NHDOC.  The handbook states, according
to the complaint, that:

> [r]eclassification hearing can be made for an
> individual inmate by the unit housing manager of
> the inmate housing unit or by the classification
> officer in cases where new information is obtained
> (e.g. sentence reduction or pending charges/
> sentences) or in cases where the behavior of the
> inmate (positive/negative) warrants earlier
> consideration. . . . If the unit team recommends
> reclassification via a unit team classification
> board to the classification officer and the
> classification officer agrees with the
> recommendation, the classification officer will
> recommend to the Warden the reclassification of
> the inmate.

<u>See</u> <u>also</u> COR 403.01 (governing reclassification hearings).

Further:

> [i]t might become necessary, after plan
> implementation, to modify certain component and
> program areas to better meet inmate needs.
> Additions to, deletions from or changes in an
> approved plan shall have factual, objective
> documentation to make any such modifications such
> as notification to offender records of active
> detainers or warrants or known pending charges,
> receipt of negative background information, minor
> or major disciplinary reports, written
> documentation from mental health or changes in
> mental health status, drug, alcohol or sex
> offender needs.  These changes shall only be made

13

by the classification officer after consultation
with appropriate staff.

COR 402.09 (governing consideration of new infomraiton obtained
after initial classification hearings).

Stayrook was placed on C-4 status in April of 2008.  Four
months later, earlier than the general rule, he was granted a
reclassification hearing.  After that hearing, it was determined
that Stayrook's behavior had improved during his time on C-4
status and the hearing officer, Cascio, therefore recommended
that his custody level be reduced to C-3.  Before that
recommendation was acted upon, however, and while Stayrook was
still a C-4 inmate, he received a disciplinary report for
fighting with an officer, and continued to show oppositional and
defiant behavior.  As a result, Cascio changed his mind, and his
recommendation, advising the Classifications Administrator that
he believed Stayrook should remain a C-4 inmate for another
ninety days.  This was not a disciplinary sanction.  Nothing in
the administrative regulations or the prison rules creates any
liberty interest in content of a recommendation, or requires a
rehearing when a recommendation is changed.  Further, nothing in
the administrative code or prison regulations limits the

14

Classification Administrator's discretion to accept or reject the recommendation of a hearing officer, except that the decision on classification must be fact-based.  Neither the administrative regulations nor the internal procedures of the prison prohibited Lacasse from rendering a decision to continue Stayrook's C-4 status.  Although Stayrook alleges that he was entitled to a new reclassification hearing before conduct that occurred after his August 25 hearing could be considered in establishing his classification status, no such entitlement exists under the Constitution, and none has been created by state law or prison regulation.  Accordingly, to the extent that Stayrook alleges claims based on the denial of his due process right to a classification hearing beyond what he received, I recommend that his claims be denied.

B.   <u>Grievance and Appellate Procedures</u>

Stayrook also challenges what he alleges was the denial of access to proper appellate and grievance procedures sufficient to enable him to exhaust his claims.  Specifically, Stayrook claims that he was given conflicting information by prison officials regarding who to make appropriate appeals to, both at the first and subsequent levels of administrative remedial measures.  It

15

appears that there is a genuine confusion, and perhaps even conflicting information, in the communication of proper procedures to inmates.  However, even assuming, for the sake of preliminary review, that Stayrook's allegations are true and that he was provided with conflicting information, I find that he has failed to state a due process claim, as he was given the opportunity for a substantive administrative review of his complaints regarding the substance of the claims raised here, by prison officials at all relevant levels of the NHDOC administration: Cascio, Lacasse, Gerry, and Wrenn.  Accordingly, I cannot find that Stayrook's due process rights were denied, or that he was denied access to the courts or access to any administrative procedures that could be used to redress his complaints.[4]

---

[4]I add one caveat here.  If the District Judge opts not to adopt my recommendation to dismiss this action, and defendants were to attempt a defense alleging that Stayrook failed to properly exhaust this matter, I would recommend that the District Judge reviewing the matter take care to examine the various sources of rules and information provided to inmates.  Although it does appear that inmates are provided with conflicting and confusing information as to what remedies are available.  I make no comment here on whether the administrative processes described by Stayrook are sufficiently confusing to render such processes "unavailable" for purposes of satisfying the exhasution requirement of 42 U.S.C. § 1997(e).

<u>Conclusion</u>

For the foregoing reasons, I recommend that this action be denied in its entirety. Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. <u>See Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge

Date:      April 13, 2009

cc:        Shawn M. Stayrook, pro se

17